THE PEOPLE ex rel. AUGUSTUS SOER, Respondent, *v.* AUSTIN A. CRANE, Appellant.

A delinquency court is not a court martial within the meaning of the Military Code (Chap. 299 Laws of 1883), but is a separate and distinct tribunal.

The provision, therefore, of said Code as amended in 1888 (§ 18, chap. 332 Laws of 1888) which provides that no person shall be brought to trial before a court martial, unless a copy of the order convening the court and of the charges and specifications shall be delivered to him a certain time in advance of his arrest, does not apply to a delinquency court for the trial of enlisted men, and no copy of the charges is required to be served to give it jurisdiction, but simply a summons as required by said Code (§ 113).

*It seems* that while the provision in reference to the service of a summons of a delinquency court does not provide for any length of notice, it must be reasonable, considering all the facts and circumstances of the individual case.

The return to a writ of certiorari to review the proceedings of a delinquency court stated that the notice was duly served on the relator, being duly directed to him at his place of residence and usual place of business as appeared by the roster. The sergeant's report of service was that he duly summoned the relator, and that he served him by mail. It was claimed that it did not appear that the notice was properly served, as it was not stated that the postage was prepaid. *Held,* untenable; that while postage was necessary, it having been stated that the notice had been duly served by mail, prepayment might be assumed, at least in the absence of a claim that the relator did not receive the notice.

The provisions of said Code requiring that enlisted men shall be warned, in the manner prescribed, to appear at any parade, etc. and requiring a return under oath of warning, do not apply to delinquencies in the nature of failure to appear at regular drills pursuant to the by-laws of the organization made as authorized by the Code (§ 68).

It appeared by the return to the writ that the delinquency court was appointed by the commander of the regiment which included the company of which the relator was a member, and that among the returns of delinquencies forwarded to the court, was that against him. The by-laws of the relator's company, which were returned, contained a provision for the assembling of the company every Wednesday evening, and imposed a fine for non-attendance; also a provision for the payment of the company expenses. The return specified the nature of the delinquencies charged against the relator and the dates on which they were alleged to have occurred, as required by the national guard regulations (§ 755). The notice was served three days before the day of appearance. The relator failed to appear and was fined by default, in accordance with the provision of said regulations (§ 757) which prescribes that in the absence of the accused, after due notice to appear, the court will consider his delinquency as established and examination waived. *Held,* that due notice was shown, and the record showed the court acquired complete jurisdiction.

Also *held,* that the by-laws were authorized by said Code (§ 139).

The return showed that the court considered the evidence adduced and fined the relator as stated; the evidence was not returned. *Held,* that it was not required (Regulations, § 756); and that it was to be assumed that there was evidence enough of a legal character to sustain the decision.

It appeared that the by-laws were approved by the judge-advocate of the division as required by the Military Code at the time they were adopted. (§ 139.) They were not approved by the judge-advocate-general as required by the amendatory act of 1888. (§ 21, chap. 332, Laws of 1888.) The relator's delinquencies occurred after the passage of that act.

*Held,* that by-laws, which had been duly adopted and approved before the passage of said act, were not affected by it, but remained in force.

Also *held,* that the provisions of said Code (§ 131), providing for the enforcement, by a delinquency court, of certain fines for offenses against the by-laws of a company had no application; that it did not apply to such fines as are imposed by the court itself, but referred to fines imposed by some other tribunal or in some other way.

So long as the moneys to be raised by the company dues are devoted to the proper, reasonable and legitimate military purposes of the company, and not to purposes wholly separate therefrom, by-laws providing for the collection and disposition of such dues, are valid and enforceable.

(Submitted January 26, 1891; decided February 24, 1891.)

APPEAL from judgment of the General Term of the Supreme Court in the second judicial department, entered upon an order made December 10, 1889, which reversed and set aside the proceedings of a delinquency court.

The relator was a member of Company K., Fourteenth Regiment, N. G. S. N. Y., and on January 14, 1889, a delinquency court was appointed, pursuant to section 104, article 14 of the Military Code, for the trial of enlisted men for any and all delinquencies, including non-payment of company dues. On February 5, 1889, a notice was served upon the relator to appear before said court on February 8, 1889, to answer for certain delinquencies with which he had been charged. The relator failed to appear, and the court having considered the evidence adduced, sentenced him to pay certain fines.

Further facts are stated in the opinion.

*Wakeman & Campbell* for appellant. The delinquency court had jurisdiction of the person of the relator. (Laws of 1883, chap. 299, §§ 114–117, 119, 122, 126–129; Military Regulations, §§ 557, 753, 755, 756.) The subsequent proceedings of the court were regular and in accordance with the Code and Regulations. (Military Code, § 117.) The amount of the fines was proper and legally imposed. (Military Code, § 123.) The relator was liable to perform the military duty, for the neglect to perform which he has been fined, and to

pay the fine and dues for which he was charged. - (Military Code, §§ 68, 139, 140.)

*John J. Leary* for respondent. The court had no jurisdiction over the person of the relator. (Military Code, § 73.) The court had no jurisdiction over the subject-matter, as to relator, for the reason that the delinquencies were not properly returned. (Laws of 1883, chap. 299, § 72 ; Laws of 1886, chap. 412, §§ 14, 73, 103.) The court had no jurisdiction over company dues. The return does not show that the by-laws were approved by the judge-advocate-general, as provided by the statute. (Laws of 1888, chap. 332, § 21.)

PECKHAM, J. (1) The relator claims that the delinquency court never acquired jurisdiction over his person.

The return of defendant to the writ of certiorari shows that a summons was duly served upon the relator warning him to appear before the court at a day and hour, and at a place therein named, " to answer for certain delinquencies with which you are charged." The alleged delinquencies, their nature and the date of their occurrence were stated in the summons, which was served by mail. There were no other or formal charges or specifications ever made out or served upon the relator, who claims that no one could be tried before a court martial unless a copy of the charges was served upon the accused in advance of the hearing, and he refers to chapter 332, section 18 of the Laws of 1888, amending the Military Code as his authority for the claim. That amendment provides that no person shall be brought to trial before a court martial unless a copy of the order convening the court and of the charges and specifications shall be delivered to him a certain time in advance of his arrest, etc.

We think the court before which the relator was summoned to appear was not a court martial within the meaning of the Military Code. That Code was passed in 1883, and is known as chapter 299 of the laws of that year. By that act (§ 100), it was provided that the military courts of this state should be : 1. Courts of Inquiry. 2. General Courts Martial. 3.

Delinquency Courts, which are of two kinds : 1. For officers ; 2. For enlisted men.

By section 104 it is provided that a commander of a regiment or battalion might at any time appoint a delinquency court for the trial of enlisted men, and that the order for such court, stating the time and place of meeting thereof should be served    *    *    *    at least five days before the time of meeting. This section said nothing about the service of a copy of the charges, as is stated by the learned judge in his opinion in this proceeding at General Term.

It was the order for the court which was to be served.

Section 113 provided for the president of a delinquency court, directing a non-commissioned officer    *    *    *    to summon delinquents to appear at a time and place to be by him appointed.

Section 114 provided that no person should be brought to trial before a general court martial unless a copy of the charges were delivered to him in advance.

In 1886 (Chap. 412), the Military Code was amended and the provision in section 104, as to serving the order for a delinquency court upon the delinquent enlisted man was omitted and the matter of the notice was thus left to section 113, which provided as already stated, for the service of a summons.

In 1888 (by chap. 332), the Code was again amended, and section 100 was so amended as to provide for garrison as well as for general courts martial. Section 114 was also amended by striking out the word " general " before " court martial," thus leaving the section to read, " No person shall be brought to trial before a court martial unless a copy of the order convening the court and of the charges and specifications shall be delivered," etc. It is claimed that by dropping out the word " general " and providing that no one should be brought to trial before a court martial without service of a copy of the charges, a court of delinquency is included.

I think not. The word " general " was omitted from section 114 by the amendment of 1888, and the same act amends

section 100 by creating a garrison court martial, and the amendment of section 114 was necessary in order to make the section apply to the garrison court martial, then for the first time created, as well as to the general court martial which had existed prior thereto. It did not by the term " court martial " include a delinquency court. The Code recognizes a distinction between the different courts, and by section 100 calls them all milltary courts, but subdivides them into four different kinds, as mentioned in the section. The Code frequently speaks of courts martial and delinquency courts, and evidently it was not supposed that the mention of the former kind of court included the latter. By section 126 it is provided that " the president of any court martial or any delinquency court," etc. Section 127 says: For the purpose of collecting any fines or penalties imposed by any *courts martial* or *delinquency courts* * * *. Section 129 : Any officer or enlisted man fined by a general court martial or delinquency court. Sections 115 and 116 provide for the proceedings after sentence by a court martial, while section 117 provides for such proceedings after sentence by " any delinquency court."

The phrasing of section 73, referred to by the relator, is not such as to alter our view of the clear distinction made throughout the Code between courts martial and delinquency courts. It was used in section 73 with reference to the character and effect to be given to a return of the non-commissioned officer upon the trial of any person returned as delinquent, and the distinction between courts martial and delinquency courts was there quite unimportant, and regarding the whole section in connection with those preceding it, the fact that a delinquency court is included there in the expression " court martial " may readily be conceded.

We think, therefore, that the question of notice for the enlisted man to appear before a delinquency court is still provided for by section 113. It is true the section does not provide for any stated length of the notice, but it is clear that it must be reasonable considering all the facts and circumstances in regard to the individual case.

(2) It is also said that it does not appear that the notice was properly served, in that it is not stated that the postage was prepaid on such notice. The defendant returns that the notice was duly served on the relator, and states that it was duly directed to him at 300 Hicks street, Brooklyn, or P. O., Brooklyn, which is his place of residence and usual place of business as appears by the roster.

The sergeant's report of service is that he duly summoned the delinquents (the relator among them), and that he served him by mail.

By the statute of the United States prepayment of postage is necessary. A service could not be duly made by mail without its prepayment. The statute which provides for the service of the summons on the enlisted man by mail, does not in so many words provide that the postage shall be prepaid, but it must be assumed that such prepayment is a necessary act to render the service by mail a valid one. I think where the return to the writ states that the service was duly made, and where the sergeant reports that he has duly summoned the delinquent by serving by mail, we may assume a prepayment of postage, which is necessary in order to render it due service by mail. To a limited extent perhaps it may be said that it is a question of law whether it was duly served, but upon the question of the prepayment of postage the rule is so plain and is so universally known that we may regard it as a statement of fact that postage was prepaid, where the person asserting the service of a notice by mail says that it was duly served. We are the less inclined to assert its invalidity where the relator does not pretend that in fact he did not receive the notice.

(3) The relator also claims that the record does not show that he was warned in regard to parades or drills as required by section 72, and that the return or affidavit of warning as required by section 73 is not present in the record.

It is plain that neither section has the least application to delinquencies in the nature of failures to appear for drills, etc., of a regular nature in the armory or other appointed place

pursuant to the by-laws of the organization. Section 68 of the Military Code permits drills of this nature in the evening when ordered by a majority of the members of the organization, and so prescribed in the by-laws. The by-laws of this organization were returned, and they show a provision for the assembling of the company for drill and instruction every Wednesday evening, and a provision for paying the expenses of the company.

Section 103 of the Code provides only for delinquency courts for the trial of commissioned officers below the rank of brigadier-general, and has no application here.

The return to the writ shows that a delinquency court was appointed by the commander of the Fourteenth Regiment, N. G. S. N. Y., the regiment including the company of which the relator was a member, and that among the returns of the delinquencies forwarded to the court was that against the relator. Section 755 of the regulations for the government of the national guard (which, by section 138 of the Military Code, " have the same force and effect as the provisions of this act "), provides that in delinquency courts the return of delinquents, on which will be noted the date and matter of delinquency, takes the place of formal charges and specifications. The delinquencies were specified in this return with their nature and the day on which they were alleged to have occurred. By section 757 of the regulations, in the absence of the accused after due notice to appear, the court will consider his delinquency as established, and examination waived. The return shows that the notice was served by mail on the fifth of February for the appearance of the relator in the same city on the eighth of the same month. This was due notice. The relator failed to appear, and he was fined by default. The record shows that complete jurisdiction over the relator was obtained by the delinquency court.

(4) The relator also claims that the court obtained no jurisdiction over company dues, because it is not shown that the by-laws were approved by the judge-advocate-general as provided by the law of 1888, chapter 332, section 21. But the

by-laws were adopted at a time when the approval of the judge-advocate of the division was requisite, instead of the judge-advocate-general. (§ 139 of Military Code of 1883.) Such approval, it appears, was obtained, and the by-laws were, therefore, properly adopted, and were in force at the time of the delinquencies on the part of the relator, although they occurred subsequently to the passage of the act of 1888. By section 21 of chapter 332 of Laws of 1888 the judge-advocate-general was substituted as the proper person to approve by-laws in the place of the division judge-advocate. All by-laws thereafter adopted were necessarily to be approved by the judge-advocate-general. The passage of the amendatory act did not, however, invalidate all by-laws theretofore existing, which had been duly adopted and approved by the division judge-advocate. They remained as valid as they had been, and were not affected by the amendment. As to future by-laws the act would apply.

(5) Provision is made by section 131 of the Military Code for the enforcement of certain fines for offenses against the by-laws of a company, and the relator contends that the conditions contained in such section before the enforcement can be proceeded with do not appear by the record to have been complied with. We think that section has nothing to do with this case. It provides for the enforcement of fines and dues by a delinquency court where such fines or dues have already been imposed by or before some other tribunal, or in some way not mentioned, provided a certified copy of the proceedings relating to the infliction of such fines, with a copy of the by-laws, rules and regulations, have been returned to the delinquency court which is to enforce the payment of such fines. This has no application to such fines as are imposed by the delinquency court itself. The fine by the delinquency court is provided for by section 123 of the Military Code.

(6) We think that section 139 of the Code authorized the particular by-laws in question. A small fine for non-attendance at drills duly appointed by by-laws has been customary for many years, and we think the company had power under

the above section to adopt the by-law. So long as the moneys to be raised by company dues are devoted to the proper, reasonable and legitimate military purposes of the company, and not to purposes wholly separate therefrom, we think the by-laws providing for the collection and disposition of the dues are good.

(7) It is also said that the return shows no trial. It shows a proper summons and a failure to appear on the part of the relator. The proceedings show that the court considered the evidence adduced and fined the relator as stated therein. The testimony need not be recorded, under section 756 of the regulations, and we must assume that there was evidence enough of a legal character to enable the court to decide upon the matter and sentence accordingly.

We have carefully looked through all the proceedings in this case, and are of the opinion that no error was committed therein, and that the court proceeded with jurisdiction over the person of the relator when it sentenced him to pay the fines set out in the case.

The order of the General Term setting aside the findings and decree of the court should, therefore, be reversed, and the writ of certiorari dismissed and the proceedings of the court affirmed, but under the facts herein, we will not charge costs against relator.

All concur.

Ordered accordingly.